IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2006

## STATE OF TENNESSEE v. BERNARDINO LIRA, also known as JOSE FERNANDEZ

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-07573     W. Otis Higgs, Judge**

_____

**No. W2005-00683-CCA-R3-CD  - Filed March 1, 2006**

_____

The defendant, Bernardino Lira, pled guilty to DUI, third offense, and driving on a revoked license, receiving concurrent sentences of eleven months and twenty-nine days and ten days, with all but four months suspended.  He reserved as a certified question whether the trial court erred in denying his motion to suppress the fruits of the stop of his vehicle.  We conclude that the question is properly certified and that the trial court ruled correctly in denying the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Leslie I. Ballin and Gray W. Bartlett, Memphis, Tennessee, for the appellant, Bernardino Lira, also known as Jose Fernandez.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kirby May and David Zak, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Following the defendants's indictment for various charges resulting from the stop of his vehicle on June 29, 2003, he filed a motion to suppress, arguing that Memphis Police Officer Courtney Cunningham did not have cause to stop his vehicle.  At the evidentiary hearing on the motion to suppress, Officer Cunningham testified that he had been a Memphis police officer for two years and described how officers were trained at the police academy to identify impaired drivers:

We were told some signs that you can look for in someone who is driving while impaired, or intoxicated. They may have their lights off, brake lights off, headlights. They may have a turn signal on when they shouldn't, or the wrong way. They could have unusual speeds. They could have unusual driving habits, such as sudden acceleration, sudden breaking [sic], stopping in the middle of the road. They could weave in and out of lanes, or in the same lane they could make wide turns, we were told to look for. There's a lot of different signs to look for.

Officer Cunningham said that around 4:30 a.m. on June 29, 2003, a vehicle, which he later determined was being driven by the defendant, had caught his eye:

There was a pick-up truck that was going on Orchi. It stopped for a few seconds in the middle of the road. There was no other traffic around. And it started again, slowly. It went a certain distance and it stopped, again, for a few seconds. It started, again.

I followed this vehicle. It made a wide right turn onto Chelsea and then it made another wide right turn on to Burr and that's when I stopped the vehicle.

He detailed two of the turns made by the defendant's vehicle:

A.      It was an unusually wide right turn. Vehicles don't usually make a turn, quite so wide. He was in the right lane, he went out too far, farther than cars usually go to turn onto Chelsea to make that right turn.

Q.      And then, what did you observe next, of that truck?

A.      He went east on Chelsea and then made a similar turn on to Burr.

Q.      Describe that turn from Chelsea on to Burr?

A.      It was the same, as far as I can recall, it was the same turn. It was a wide right turn, unusually wide.

Officer Cunningham explained why he then activated his siren and blue lights to stop the defendant's vehicle:

I wanted to observe what was going on with this car. I knew that there was something unusual about it. I didn't know – but, I thought that he was probably intoxicated. I didn't know if he possibly had a medical problem, possibly was casing the area, maybe he was lost. I didn't know what the problem was. But there was something wrong about this vehicle, so I wanted to check on it.

The defendant did not testify or present any proof at the evidentiary hearing.

## ANALYSIS

On appeal, the sole issue presented by the defendant in his certified question is his claim that the trial court erred in overruling his motion to suppress. The State responds both that the question is not properly before this court and that, in any event, the trial court did not err in its ruling.

### I. Reservation of Certified Question

The judgment form entered in this matter on March 17, 2005, states, "The defendant reserves the following certified question of law, as referred to in the Rule 37(b)(2)(i) consent order, which is hereby incorporated by reference: 'Did the court err in denying the defendant's motion to suppress this stop of his motor vehicle on June 29, 2003?'" The consent order, also entered on March 17, 2005, sets out the certified question as stated on the judgment forms and states that the defendant, the State, and the trial court all agree that the certified question is dispositive of the charges. The State argues on appeal that the certified question "does not clearly identify the reasons [the] defendant gave at the suppression hearing to contest the seizure." We note that the defendant's motion to suppress, contained in the technical record, objects that the defendant was stopped "without benefit of a warrant, without probable cause, and without any other justifiable reason." The defendant's supplemental motion to suppress refers to an attached exhibit, "a copy of the arrest ticket that purportedly gives the officer's reasoning for stopping the Defendant, none of which amount to probable cause or articulable facts that would justify the stop, search and seizure herein."

The prerequisites for reserving a certified question of law were explained by our supreme court in State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988):

> This is an appropriate time for this Court to make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv). Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. . . . Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified.

In arguing that the defendant has not clearly identified his reasons for asserting that the stop and seizure were unlawful, the State relies on the opinion of this court in State v. Nicholas J. Johnson, No. M2000-03162-CCA-R3-CD, 2001 WL 1356369, at *2 (Tenn. Crim. App. Nov. 6, 2001), perm. to appeal denied (Tenn. Apr. 8, 2002), wherein this court held that the certified question as to "'the validity of the search and seizure of the' Appellant" was so broad that its resolution "would potentially require a complete dissertation of the law of search and seizure of which this court is not willing to engage in absent specific boundaries circumscribed by the Appellant." By contrast, the defendant in the present case asserts that his vehicle was stopped without a warrant, probable cause, or "any other justifiable reason." We conclude that this language sufficiently identifies and limits the issues which we must consider.

## II. Validity of Stop of Defendant's Vehicle

We now will review the basic question of this appeal, which is that the defendant's vehicle was stopped without warrant, probable cause, or reasonable suspicion.

In Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968), the United States Supreme Court held that a law enforcement officer may conduct a brief, investigatory stop of an individual if the officer has a reasonable suspicion, based on specific and articulable facts, of criminal activity on the part of the individual. Under the Terry rationale, an officer may stop and detain a vehicle based on the reasonable suspicion that one of its occupants is either engaged in, or about to be engaged in, criminal activity. Ornelas v. United States, 517 U.S. 690, 693, 116 S. Ct. 1657, 1662, 134 L. Ed. 2d 911 (1996); State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998); State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). Reasonable suspicion is an objective standard and must be determined from the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981); Ornelas, 517 U.S. at 696, 116 S. Ct. at 1661-62. "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18, 101 S. Ct. at 695. Reasonable suspicion will be found to exist only when "the events which occurred leading up to the stop" would cause an "objectively reasonable police officer" to suspect criminal activity on the part of the individual stopped. Ornelas, 517 U.S. at 696, 116 S. Ct. at 1661-62.

At the conclusion of the evidentiary hearing, the trial court concluded that Officer Cunningham had reasonable suspicion to stop the defendant's vehicle:

> According to what I understood, the officer's testimony is that he observed the defendant at 4:30 a.m. in his vehicle, he stopped twice on Orchi at 4:30 in the morning and then he says he made wide, slow turns onto Chelsea and then onto Burr, I believe another street. And he felt that that was unusual based upon the time and the circumstances and so considering all of the facts and circumstances he pulled him over.

-4-

Well, the fundamental question here is whether or not he had probable cause to pull him over. Nothing else appearing, other than what I recited for the record.

And I am going to agree with the officer, based upon all of the facts and circumstances of this fact scenario. I'm going to overrule the motion to suppress and we'll set it for trial and you can certainly re-argue this to the jury.

It is obvious that the trial court accredited the testimony of Officer Cunningham, the only witness at the evidentiary hearing. Officer Cunningham testified as to certain indicia of an intoxicated driver, which included driving erratically and making wide turns. He observed the defendant's vehicle at 4:30 a.m. stopping twice, at least once in the middle of the road, moving slowly after a few seconds, and then making two "unusually wide" right turns. Believing that the defendant could have a medical problem, be intoxicated, or "casing the area," Officer Cunningham activated his siren and blue lights and stopped the defendant's vehicle. This matter is distinguishable from State v. Binette, 33 S.W.3d 215, 216 (Tenn. 2000) (within a two-minute period, the defendant's vehicle touched the center-line at least four times and made a sudden swerve within the lane) and State v. Garcia, 123 S.W.3d 335, 338 (Tenn. 2003) (defendant's vehicle swerved within its own lane).

Given the facts, as we have set out, we conclude that the trial court correctly denied the motion to suppress.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-5-